# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

FREDERICK BROOKS,

                                     :

        Petitioner,                       Case No. 3:12-cv-318

                                     :         District Judge Thomas M. Rose

    -vs-                                     Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional
   Institution,

                                     :

        Respondent.

---

# REPORT AND RECOMMENDATIONS

---

Petitioner Frederick Brooks brought this habeas corpus case to obtain relief from his conviction and sentence in the Montgomery County Common Pleas Court on two counts of aggravated

robbery, two counts of felonious assault, and one count of having weapons under disability for which he is serving a sentence of twenty-one years imprisonment in Respondent's custody. The case is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Petitioner pleads the following grounds for relief:

**Ground One:** Appellant [sic] counsel was ineffective.

1

**Supporting facts:** Failed to raise issues of Tr. Ct. failure to merge Agg. Robbery charges as well as the Felonious Assault and Tr. Ct. failure to allow Appellant to fire retained counsel when Appellant expressed dissatisfaction with representation.

**Ground Two:** Tr. Ct. erred for not merging Agg Robbery Convictions at the time they merged felonious assault convictions.

**Supporting facts:** Remanded from the Appellate Court to Tr. Ct. for merger of convictions Felonious Assault (serious harm) and Felonious Assault (deadly weapon). Tr. Ct. should have recognized and Sua sponta [sic] ordered merger of Agg. Robberry (serious harm) and Agg Robbery (deadly weapon).

**Ground Three:** Tr. Ct. erred for not allowing Appellant to fire retained counsel when Appellant went on record to express his desire to fire him.

**Supporting facts:** Appellant expressed dissatisfaction on the record with his private retained counsel and Tr. Ct. refused to allow him to fire him.

**Ground Four:** Appellant was denied a fair and impartial trial and Due Process.

**Supporting facts:** Tr. Ct. initially refused to allow a self defense jury instruction which impeded defense counsel in how they presented their case. Tr. Ct. stated that the felonious assault arrived [sic] out of the Agg. Robbery (TR 549) which led Defense Counsel to believe the Agg. Robbery and Felonious Assault were considered allied offenses.

(Petition, Doc. No. 1, PageID 4-5.)

In ¶13 of the Habeas Petition, Mr. Brooks admits that he had not raised Grounds for Relief Two and Three (Grounds 12(B) and 12(C) as they are listed in the Petition) because "they are the basis for Ground 12 A." *Id.* at PageID  5.

**Analysis**

2

**Grounds One, Two, and Three**

The Supreme Court has held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes,* 433 U.S. 72 (1977); *Engle v. Isaac,* 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million,* 201 F.3d 711, 716 (6111 Cir. 2000)(citation omitted); *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle,* 456 U.S. at 110; . *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis of possible procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(en bane); *Eley v. Bagley,* 604 F.3d 958, 965 (6th Cir.), cert. *denied sub nom, Eley v. Hauk,* _ U.S._, 131 S.Ct. 822 (2010); *Reynolds v. Berry,* 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith,* 785 F.2d 135, 138 (61h Cir. 1986); *accord Lott v. Coyle,* 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001).

3

First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen,* 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,785* F.2d at 138.

Petitioner explicitly admits that he has never presented Grounds Two and Three to the Ohio courts because they allegedly form the basis of Ground One, ineffective assistance of appellate counsel. Moreover, the Petition does not claim that he has ever presented Ground One to any court. Ohio law provides a procedural mechanism for raising claims of ineffective assistance of appellate counsel. To do so, an appellant must file an application under Ohio R. App. P. 26(B) claiming ineffective assistance of appellate counsel and setting forth the assignments of error which he or she believes appellate counsel should properly have raised.

Petitioner has never filed an application for reopening under Rule 26(B) and his time within which to do so has expired. His direct appeal was decided December 3, 2010, so his time to file expired March 3, 2011 . The Sixth Circuit Court of Appeals has often held that the time limit in Ohio R. App. P. 26(B) is an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859, 862 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano,* 527

4

F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards,* 281 F.3d 568, 577-578 (6th Cir. 2002); *Tolliver v. Sheets,* 594 F.3d 900, 928, n.1 (6th Cir. 2010), *citing Rideau v. Russell,* 2009 WL 2586439 (6th Cir. Aug. 24, 2009). Brooks has offered no cause to excuse his failure to timely file an application under Rule 26(B). Therefore Grounds One, Two, and Three are procedurally defaulted and should be dismissed with prejudice.

### Ground Four

In Ground Four, Mr. Brooks claims he was denied a fair trial and due process because the trial judge at first said he would not give a self-defense instruction and did not change his mind until after the evidence had been presented. Brooks claims this impeded defense counsel 's presentation of the case.

Brooks also asserts that this led trial counsel to believe aggravated robbery and felonious assault were allied offenses. The Court does not understand what that claim has to do with the balance of the claim. Aggravated robbery and felonious assault are not allied offenses of similar import under the relevant Ohio statute, Ohio Revised Code§ 2941.25. In any event this portion of the claim was not raised on direct appeal or in any other proceeding in the Ohio courts and is therefore procedurally defaulted on the same basis as Grounds One, Two, and Three.

The first part of Ground Four was presented to the Second District Court of Appeals on direct appeal and decided by that court on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(l); H*arrington v. Richter,* 562 U.S._, 131 S. Ct. 770,785 (2011); *Brown v. Payton,* 544

5

U.S. 133, 140 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Feny) v. Taylor,* 529 U.S. 362, 379 (2000).

Brooks raised this claim as his first assignment of error on direct appeal and the court of appeals decided it as follows:

> "THE TRIAL COURT DENIED THE APPELLANT A FAIR [TRIAL] BY INITIALLY STATING IT WOULD NOT GIVE AN INSTRUCTION ON SELF DEFENSE AND THEN HINDERING THE APPELLANT IN PRESENTING THIS DEFENSE."
>
> According to Brooks, the trial court "from the outset of the trial informed Appellant's counsel that it would not be giving the jury an instruction on self defense as to any charge. On several occasions the Court sustained objections when the questions posed by Appellant's counsel sought to elicit testimony to support his claim of self defense. It is also apparent from the record that the Appellant did not voir dire the jury on the issue of self defense because Appellant's counsel knew that the jury would not be instructed on this defense. The Court, however, right before closing argument changed its mind and stated it would give a self defense instruction as to Felonious Assault. This was clearly too late to eliminate the prejudice that had already resulted from the limitations imposed by the Court on the Appellant's attempts to develop this defense. The end result was that the Appellant was denied a fair trial and his right to due process was denied." ·
>
> "The United States Supreme Court has held that '[t]he fundamental requisite of due process of law is the opportunity to be heard.' (Internal citations omitted). The court has also held that: 'An elementary and fundamental requirement of due process in any proceeding * * * is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' (Internal citations omitted).
>
> "Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution guarantee due process of law, and thus guarantee 'a reasonable opportunity to be

heard after a reasonable notice of such hearing.'" *Ohio Valley Radiology Assocs., Inc. v. Ohio Valley Hospital Assoc.* (1986), 28 Ohio St.3d 118, 28 Ohio B. 216, 502 N.E.2d 599.

"Self-defense is an affirmative defense which the accused has the burden to prove by a preponderance of the evidence. R.C. 2901.05(A); (citation omitted). 'In order to establish self-defense, a defendant must prove: ( 1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" (citations omitted). *State v. Kleekamp,* Montgomery App. No. 23533, 2010 Ohio 1906, P 52.

"'A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence.' (Citation omitted). Jury instructions should be tailored to fit the facts of the case. (Citation omitted). 'The trial court is not required to instruct the jury on self-defense in every situation in which its presentation is attempted; rather, a trial court need only instruct the jury on self-defense if the defendant "has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue."' (Citations omitted). 'Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.'" *State v. McGhee,* Montgomery App. No. 23226,2010 Ohio 977, P 42.

We initially note that Brooks has not provided us with a transcript of the voir dire portion of his trial, pursuant to App.R. 9. "The duty to provide a transcript for appellate review falls upon the appellant. (Internal citations omitted). An appellate [sic] bears the burden of showing prejudicial error by reference to matters in the record." *Shirley v. Kruse,* Greene App. No. 2006-CA-12, 2007 Ohio 193. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, we have nothing to pass upon and, thus, we have no choice but to presume the validity of the lower court's proceedings and affirm." *Id.*

A review of the record that is before us belies Brooks' assertion that the trial court "at the outset of trial" informed him that it would not

7

instruct the jury on self-defense. Brooks argued in part as follows in his opening statement: "Fred Brooks invited Josh Adams and his friend, [Mallory], to his house, his own house where he lived, with his mother in order to discuss the buying and selling of drugs. Once they arrived, he invited them in, and at that point they had an argument. They wanted more drugs then [sic] * * * he could provide. He only had a very little bit. They understood that he had money. * * * And they attempted to rob him. We believe the evidence will show that they pulled the gun, [Adams] pulled the gun, attempted to threaten-- put [Brooks] in fear of eminent [sic] danger, or fear of the loss of his life. He was able to obtain a gun from his house that his mother maintained. He took the gun and he shot, and it unfortunately hit [Adams] in the throat, in the neck, and he was seriously injured. We don't dispute that.

"We contend that [Brooks] was acting in self defense. I think the evidence will support that. Later, and it was a good while later, his mother brought forward a gun that she found at the scene, a 9rnrn, she said this is a gun she believes [Adams] had used to threaten and attempt to hurt * * * [Brooks]. This 9rnrn firearm will match * * * ammunition found in the car that brought * * * Adams to the house, a car driven by * * * Young as they carne to deal in drugs.

"So, although it's very unpleasant, and though it's a. shame, it's a pity that these things occurred, we believe you will hear testimony that the robbery actually was attempted to be perpetrated by the so-called victims,*** [Adams and Mallory], and that [Brooks] was defending himself in this instance.

"* * * But the evidence will still show, if you want to listen to [Brooks] at the very end of the trial because we are going to go last, and analyze what he says, and what his other witnesses say, * * * that the actual robbery attempt he did not do, that he had the money, that they attempted to take it from him by force, that they in fact pulled a gun on him and he defended himself, and that's what I think you will find. And based on that, we're going to ask you to acquit * * * Brooks of all charges."

The following day, prior to the resumption of trial, the court indicated on the record, outside of the presence of the jury, that it would not instruct the jury on self defense, on the authority of *State v. Higgins,* Montgomery App. No. 18974, 2002 Ohio 4679, P 19. ("In order for the jury to find Higgins guilty of [aggravated burglary], it necessarily had to find that he was trespassing when he

injured Mathews. This is inconsistent with the defense of self-defense, because it presupposes that Higgins was at fault in creating the situation that gave rise to the altercation. Thus self-defense was not available as a defense"). According to the court, "self defense is not a defense to the charge of aggravated robbery. And the court makes that finding on the basis that one of the elements of aggravated robbery is the commission of a theft offense. * * * a self defense basically admits the facts claimed by the prosecution. Basically, self defense admits that there was, in fact, a theft, but then relies on other independent facts or circumstances to exempt the Defendant from liability. The Court finds that really this is inconsistent. The self defense is inconsistent because it presupposed that, in this case, Mr. Brooks was, in fact, committing a theft offense and that is inconsistent with self defense. So that's the Court's analysis for saying that the - - or making the finding that self defense is not applicable in this case.

"The court is also not going to give the instruction on self defense to * * * the other charges of felonious assault for the simple reason that the felonious assaults in this case arrive [sic] out of the aggravated robbery case. * * *"

In response, Brooks' counsel asserted in part, " * * *Brooks' defense in this case to the charge of aggravated robbery is a denial. He's saying he did not rob these people, they in fact robbed him. So he's admitting no theft offense and he's asserting no self defense toward the robbery; his defense there is a denial. He's not admitting a theft offense, he's never indicated he was. What he's admitting is shooting * * * Adams, * * * in the neck, and that he's claiming he did as self defense, because he himself was about to be shot or a weapon was pointed at him. So we're asking the Court to give the instruction * * * of self defense relative to the charge of felonious assault. * * *

"* * * In the Higgins case, the Defendant, Mr. Higgins, trespassed and he admitted trespassing and he was convicted of aggravated burglary * * * . * * * Brooks admits to no offense here. He denies flatly and his defense for the robbery would be that he didn't do it. His defense for the felonious assault would be that he, in fact, was acting in self defense. * * * . "

According to Brooks, the trial court prevented Williams from testifying regarding "anything Adams said" in the course of the incident, and that those statements would have corroborated Brooks' testimony that he was robbed at gunpoint by Adams. Brooks fails to

direct our attention to any specific errors in the record regarding Williams' testimony, as required by App.R.16(D) . "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is not admissible pursuant to the hearsay rule in Evid.R. 802. Williams testified, over objection, that she heard the men arguing downstairs, and the trial court correctly ruled that she could not testify "as to what was said down there." She further described what she observed in her home, namely that Adams pointed a gun and fired at an unarmed Brooks, and that she subsequently retrieved the gun that Adams fired from her dining room floor. We note that when Williams testified that Brooks "was still saying things" on the porch after the shooting, defense counsel indicated that he wanted to "make a proffer" regarding Brooks' remarks outside, although no such proffer was made.

Regarding his own testimony, Brooks initially directs our attention to the following exchange wherein he described his ascent from the basement with his mother's gun:

"Q. Do you see [Adams]?

"A. I seen him as I'm coming up the basement stairs.

"Q. Does he still have the gun in his hand?

"A. Yes.

"Q. Does he point it at you?

"A. It's pointed at mew as I come up the stairs, only half of my body -- I comes up with [the] majority of my head out of the basement (demonstrating). I see him pointing the gun. That's· when I fired.

"A. I fired once. He's backing up towards the side door. That's when I come out the doorway where the stair - - where the stove is and the refrigerator is, and between the dining room and the kitchen. I fire again.

"Q. Now, when you chose to get this gun and fire it, were you in your own home? "A. Yes.
"Q. And were you in fact basically trapped?

10

"A. Yes.

"Q. So there was nowhere you could really run, is that so?

"A.No.

"MR. FRANCESCHELLI: Objection, Your Honor.

"THE COURT: Sustained.

"MR. WILMES: May we approach, Your Honor?

   * * *

(At sidebar)

"THE COURT: We had this discussion.

"MR. WILMES: Are you talking about new jury instructions?

"THE COURT: I'm talking about I'm not going to give you that self-defense defense [sic], and this is part of it, and so you're not going there. Pure and simple. I'm not giving you that. * * *

"MR. WILMES: But we're going to deal with that later on properly.

"THE COURT: Absolutely, but I'm just telling you—

"MR. WILMES: You're stopping me from asking questions that would allow me to prove stuff, so that's-- we're establishing.

"THE COURT: You can say whatever you want. But I'm not going to read the instruction.

"MR. WILMES:*** Can I ask that question?

"THE COURT: I think you can ask it, but * * * I'm not going to give the instruction. * * *

   * * *

"THE COURT:*** For the record, I think his client can testify as to * * * what happened there, so I'll let you do that. But you're not getting the instruction.

11

"MR. FRANCESCHELLI: You know that I objected because it was leading or like was suggesting the answers to him.

"THE COURT: Well, I know. But I'll-- but you've got to know where I'm headed (indiscernible) - -
"MR. WILMES: Okay. I just want to get over that real quick.

"THE COURT: Okay, go do that. Go ahead.

(End sidebar)

"BY MR. WILMES:

"Q. You say that Josh had already shot at you once, toward the kitchen and the stairs, is that correct?

"A. Yes.

"Q. And was pointing a gun at you again as you ascended the stairs? Is that what you said?

"Yes.

"Q. What did you think he might do?

"MR. FRANCESCHELLI: Objection.

"THE COURT: Overruled.

"THE WITNESS: I believe he was going to shoot again.

"BY MR. WILMES:

"Q. You believed that he might seriously hurt or kill you?

"A. Right.

"Q. Were you in fear for your life?

"A. Yes. At that time, I was."

Brooks further directs our attention to a later exchange, after defense counsel asked Brooks if he owned a gun on February 16th, as follows:

"THE WITNESS: No, I didn't own a gun.

"BY MR. WILMES: You just knew where your mother kept one?

"A. Yes.

"Q. Did you feel you were in an emergency situation?

"MR. FRANCESCHELLI: Objection

"THE COURT: Sustained.

"BY MR. WILMES: Did you think you might get shot?

"MR. FRANCESCHELLI: Objection.

"THE COURT: Counsel. Sustained.

"BYMR. WILMES:

"Q. Why did you go down in the basement and get the gun?

"A. MR. FRANCESCHELLI: Objection.

"THE COURT: Sustained.

"MR. WILMES: Basis for it?

"THE COURT: For the reason that we discussed at sidebar.

"* * *

"BY MR. WILMES:

"Q. Were you sorry that [Adams] had been shot?

"MR. FRANCESCHELLI: Objection.

"THE COURT: Sustained."

We note that on Brooks' redirect examination, the following exchange occurred:

"Q. Did you rob [Adams] or anyone else that night?

13

"A. No, I didn't
.

"Q. Did you shoot him?

"A. Yes, I did shoot him.

"Q. Why did you shoot him?

"A. Because I was in –

"MR. FRANCESCHELLI: Objection.

"THE COURT: Overruled.

"THE WITNESS: So answer?

"THE COURT: Yeah, you can answer.

"THE WITNESS: Because I was in fear. I was trying to protect myself."

After Brooks' testimony, defense counsel asked to proffer evidence, and he stated, "the chief proffer is the Defense has attempted to ask several questions pursuant to the theory of self defense and have been estopped from doing that. So we believe that Mr. Brooks would be able to explain how he felt in fear for his life, * * * all the tenets that are contained in the instruction for self-defense, which we're apparently not going to receive.

"That he didn't create the fray. That he had no option to retreat or even duty to retreat, being in his own house. And· that he was in a reasonable fear of death or serious physical injury when he took a weapon and used it. There were a series of questions along those lines I would have asked him, and he would have said yes to every one of those and amplified thereon."

When the trial court, after the testimony of the State's rebuttal witnesses, indicated that it would in fact instruct the jury on self-defense, Brooks moved for a mistrial. Defense counsel asserted, "At the very beginning of the case the Court advised all parties, including defendant, that it would not allow argument or presentation of evidence on the issue of self-defense.

14

"Several times during the trial defense counsel was instructed not to go into those areas and now the Court has reversed itself, decided it will allow instruction on self-defense, but the defendant has been irreparable [sic] disadvantaged by the continuous rulings of the Court on that issue.


"And I'll give a couple of examples here. If l had known that I could argue self-defense, I would have voire [sic] dired the jury differently. I would have asked different questions. I would have possibly selected a different panel, a panel who were sympathetic to the conception of the Castle Doctrine where your homee is your castle, a set of jurors who might view the incident of self-defense and give us their opinions on the plausibility of that issue. I wasn't able to do that even at the voir dire.

"Then when giving the jury the roadrnap of what defense evidence was going to show, I wasn't able to argue self-defense or tell them to look for that particularly issue [sic], and I finally* * *would have asked a little more elaborate questions of the defendant, a little different style and presented my case entirely differently had I known that I had the opportunity to and right to assert self-defense.

The motion for mistrial was overruled, and in closing argument, Brooks argued that he acted in self-defense. The trial court then instructed the jury on self-defense.

Having throughly [sic] reviewed the record before us, Brooks testified that he lived at the Oakridge residence, that Adams pointed and fired a weapon at him in the course of a robbery, that Brooks believed that Adams was going to fire the gun again as Brooks ascended the stairs, that he felt trapped in the stairway, that he believed Adams might seriously injure him or kill him, and that he was in fear for his life. On redirect, Brooks testified that he was in fear and trying to protect himself during the alleged robbery. Williams' testimony corroborated that of Brooks. From this evidence, the trial court concluded that Brooks had introduced evidence, which, if believed, would raise a question in the minds of the jury concerning the existence of reasonable doubt of Brooks' guilt of felonious assault, based upon his claim of self-defense.

Higgins is distinguishable in that the defendant therein admitted the underlying offense of trespass. Since Brooks was given a meaningful opportunity to present his defense, he has not

15

demonstrated prejudice, and his right to due process was not violated by the trial court.

There being no merit to Brooks' first assigned error, it is overruled.

*State v. Brooks,* 2010-Ohio-5886, ~~ 25-132, 2010 Ohio App. LEXIS 4972 (Ohio App. 2"d Dist. Dec. 3, 2010).

Certainly, the state trial court's approach to the defense of self-defense was not perfectly consistent. However, defense counsel was able to argue self-defense in his opening statement and he was able to present substantial evidence, from both Brooks and his mother, in support of that defense. The trial judge even overruled a number of perfectly appropriate leading question objections made by the State in the midst of the presentation. To the extent Brooks' counsel had additional evidence which would have supported the defense, he failed to make the proffer that he said he would make and the court of appeals therefore had no record of what the excluded evidence might have been. Finally, Brooks got the self-defense instruction he requested.

On balance, Brooks received a fair opportunity to present his claim of self-defense. The court of appeals decision rejecting this claim is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court law. Ground Four should be dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would

be objectively frivolous.

September 27, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

17